**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-201-DLB**

**MIGUEL EDUARDO YLARRAZA-TREJO**                                    **PETITIONER**


v.                            **MEMORANDUM OPINION AND ORDER**


**WARDEN, BOONE COUNTY JAIL, et al.**                               **RESPONDENTS**

* * * * * * * * * *

## I.  INTRODUCTION

This matter is before the Court on Petitioner Miguel Eduardo Ylarraza-Trejo's *pro se* Petition for Writ of Habeas Corpus (Doc. # 1), Motion to Preserve Jurisdiction and Prevent Transfer (Doc. # 2), Emergency Motion for Immediate Release (Doc. # 3), and Emergency Motion for Stay of Removal (Doc. # 4).  The Federal Respondents filed a Response to the Petition on May 21, 2026, conceding that the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, -- F.4th --, 2026 WL 1283891 (6th Cir. May 11, 2026) controls in this matter.  (Doc. # 7 at 2).  For the following reasons, the Court will **grant** the Petition.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States as a minor through the Office of Refugee Resettlement before being released to a sponsor in 2022.  (Doc. # 1 ¶¶ 1–2).  He is the father of a United States citizen and has resided with his partner and child in the United States since entering the country.  (*Id*. ¶ 5).  He was detained by local law enforcement on March 28, 2026 and was transferred to ICE custody

1

three days later. (*Id*. ¶¶ 6–7).  He is currently detained at the Boone County Jail in Burlington, Kentucky.  (*Id*. at 3).

On May 5, 2026, Petitioner, proceeding pro se, filed the instant Petition for Writ of Habeas Corpus (Doc. # 1), among other filings.  The Court directed Respondents to respond on May 8, 2026.  (Doc. # 6).  The Federal Respondents filed their Response on May 21, 2026, acknowledging that the Sixth Circuit's decision in *Lopez-Campos* controls. (Doc. # 7 at 2).

## III.    ANALYSIS

Petitioner argues that his present detention violates the Immigration and Nationality Act ("INA") and his right to due process under the Fifth Amendment.  (Doc. # 1 at 4).  As a result, he requests that the Court order his immediate release or, alternatively, an individualized bond hearing under 8 U.S.C. § 1226(a).  (*Id*. at 5).

### A.    Relevant Framework

On May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos et al. v. Raycraft et al.*, wherein it determined that § 1226 is the properly applied statutory provision for detaining noncitizens like Petitioner who are not "seeking admission" into the United States.   --- F.4th ---, 2026 WL 1283891, at *11 (6th Cir. May 11, 2026).  In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225.  *Id*. at *6.  Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen detainees, concluding that "[t]o hold otherwise would subject long-term law-

2

abiding residents in the United States. . . to the hardship of mandatory detention without due process." *Id*. at *13.

The same reasoning applies here. Petitioner has been in the United States for roughly four years. (Doc. # 1 ¶¶ 1–2). After being detained at the border he was released into the country years prior to his present detention. (*Id.* ¶ 5). The Federal Respondents acknowledge that *Lopez-Campos* controls Petitioner's case. (Doc. # 7 at 2). Specifically, the Federal Respondents recognize that "[u]nder the Sixth Circuit's reasoning, Petitioner is detained under § 1226(a) and he is entitled to file a motion for custody redetermination with the Immigration Court." (*Id.*). Accordingly, pursuant to the Sixth Circuit's recent opinion in *Lopez-Campos*, the Court concludes that § 1226 governs Petitioner's detention.

### B.    Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Petitioner, the Court must now determine whether his present detention violates his due process rights. The Sixth Circuit has concluded that petitioners like Petitioner have "passed through our gates" which affords them protection by the Fifth Amendment's Due Process Clause. *See Lopez-Campos*, 2026 WL 1283891, at *11.

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))). To determine

3

whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Petitioner has a cognizable liberty interest in avoiding detention. *See Lopez-Campos*, 2026 WL 1283891, at *13 (a person's liberty interest in being free from detention "is the most fundamental interest protected by the Due Process Clause and is shared by citizens and noncitizens alike."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (6th Cir. 2004) (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992*); see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Petitioner is not afforded a detention hearing. *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted).  To date, Petitioner has not had a detention hearing at which his eligibility for bond is determined on the merits of his individual circumstances.  Thus, Petitioner's present detention creates a high risk of an erroneous deprivation of his liberty interest.  Accordingly, the second *Mathews* factor favors Petitioner.

As to the third factor, the Federal Respondents have not put forth any argument whatsoever advocating for the United States' interest.  The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length about above, "serve the governmental interest in public safety."  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sept. 19, 2025) (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Petitioner.

Petitioner claims that immediate release is the most appropriate remedy in this case. (Doc. # 1 at 4).  This Court agrees with Petitioner that his Fifth Amendment due process rights were violated when he was detained without access to an individualized hearing.  However, the Court disagrees that immediate release is the proper remedy.

Rather, this Court agrees with other district courts in the country which have concluded that the proper remedy to this violation is a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("[T]he government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020) (finding that the "district court correctly ordered a new bond hearing where the Government bore the burden of proof"); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Ylarraza-Trejo's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **constitutionally adequate bond hearing where the government bears the burden of proof by clear and**

6

**convincing evidence** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)     Respondents shall file a Status Report with this Court **on or before June 15, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 1st day of June, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-201 MOO granting habeas.docx